UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EDDIE LAREECE PITTMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:11-cv-00258-NT |
| | ) | |
| RONALD MANSON CARIGNAN, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION**

The saga of <u>Pittman v. Ron LNU</u> has been smoldering on this Court's docket since June 30, 2011. In its first incarnation the case was an employment discrimination case ostensibly brought pursuant to "federal employment laws" (ECF No. 1, at 1), against Denny's Corporate Office and "Ron," who allegedly was employed at the Denny's Restaurant in Bangor, Maine during the same time period as the plaintiff. Following the return of service on Denny's Restaurant no answer was filed, Ron LNU was never served, and no motion for default or default judgment was sought against Denny's. On December 15, 2011, the Court dismissed the action for failure to prosecute.

Plaintiff then filed a motion to re-open the case explaining that he had resolved the case as it pertains to Denny's Restaurant, but that he wanted to proceed against Ron LNU and requested that the case be reopened as to that defendant. The Court ultimately found that plaintiff's excusable neglect in failing to provide an address for service on Ron LNU supported granting the motion to reopen and allowing plaintiff to attempt to make service on that defendant. In accordance with Rule 4 of the Federal Rules of Civil Procedure and the Court of Appeals decision in <u>Laurence v. Wall</u>, 551 F.3d 92, 93 & n.1 (1st Cir. 2008), I ordered the U.S. Marshal to attempt service on Carignan. On February 22, 2012, the marshal returned the

summons unexecuted because he was unable to locate Carignan at the address provided to us. (ECF No. 21.)  Pittman then sought and obtained leave to attempt to locate Carignan with his own resources and obtain service by other means.

In his First Amended Complaint (ECF No. 16) Pittman asserted that this Court had jurisdiction of the dispute between himself and Carignan pursuant to Title VII of the Civil Rights Act of 1964.  On August 10, 2012, Pittman filed a Second Amended Complaint, alleging jurisdiction pursuant to 42 U.S.C. § 1983 and alleging pendant state common law and statutory claims.  (ECF No. 35.)  Pittman finally had that document served on the defendant on August 22, 2012.  (ECF No. 37.)  Carnigan has appeared pro se and filed an answer and a motion to dismiss (ECF No. 38) that is currently pending before the Court.  I recommend that the Court grant the motion for the following reasons.

## THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Pittman asserts that his claim is "based on federal (42 U.S. 1983 Statutes of Civil rights Act of 1871) and state laws (MRS title 5 § 4651)."  He also claims the following common law causes of action:  "(1) violation of plaintiff's right be free from deliberate interfering harassment while working;  (2) intentional infliction of emotional distress;  (3) assault and battery;  (4) invasion of privacy;  and (5) gross (deliberate) negligence."  Pittman claims that the events giving rise to his complaint all occurred between February 2010 and August 1, 2010.  During this time period Pittman worked at Denny's Restaurant in Bangor, Maine and was exposed to what he believes were inappropriate remarks relating to sexuality and sexual orientation from other employees.  Although Pittman never quite says so in the complaint, apparently he is alleging that one or more gay men worked at Denny's and Pittman believed their behavior toward him was inappropriate.

Pittman claims that "Defendant Ron" was "more significant" because he made these inappropriate remarks "with deliberate intent to aggravate and/or annoy."  According to Pittman, "Ron is ignorant and obviously doesn't care how he affects people around him."  Pittman describes the following six incidents as the factual basis for his lawsuit:  (1) in February 2010, the defendant told Pittman "I am the drag queen around here . . . figure that out";  (2) in April 2010, while working with defendant arranging silverware, the defendant told him, "Let me figure out how I will thank you for bringing silverware to me . . . ok, I won't!";  (3) in May 2010, "Ron told another employee 'I want your fish' which was analogous for 'penis'";  (4) in May 2010, "Defendant Ron rushed by the Plaintiff while the Plaintiff was clocking in for his shift of work and slapped the Plaintiff on his left shoulder (Assault) which inflicted a little pain";  (5) in June 2010, while again working with the silverware, the defendant told Pittman, "I love you;  it's a manly love;  it's like a man loving another man!";  and then (6) in June 2010, "Defendant Ron told the Plaintiff  'Eddie, Happy Father's day!'"[1]  Carignan left Denny's employment in June 2010 and Pittman quit soon thereafter in August 2010.  There are no allegations of any contact at all between Pittman and Carignan between August 2010 and August 22, 2012, when a process server hired by Pittman finally located Carignan in Virigina Beach, Virginia, and served a copy of the Second Amended Complaint on him.  Pittman seeks $20,000.00 in compensatory damages and $25,000.00 in punitive damages.

### THE MOTION TO DISMISS

In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff so long as they are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible

---

[1]     Lest the reader might think such a comment in June was not inappropriate at all, Pittman explains that he never told Ron he had kids and thus the statement was "an obvious ploy to get inside the Plaintiff's head (harassment)."

basis for recovery.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  Because both Pittman and Carignan are pro se litigants, their pleadings are subjected to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).

Carignan has filed a cogent, one-page motion to dismiss.  (ECF No. 38.)  He admits he worked at Denny's when Pittman did, but denies all other allegations.  He correctly notes that 42 U.S.C. § 1983 requires a defendant to have acted under color of state law and that he, of course, was not acting pursuant to any state authority while employed at Denny's.  Carignan also provides the Court with citations to three other federal lawsuits filed by Pittman which he says establish that Pittman has a penchant for filing frivolous lawsuits.[2]  Finally, Carignan notes that state law claims may not be within this Court's jurisdiction and that possibly the assault claim is barred by the statute of limitations, although he acknowledges a lack of familiarity with the controlling law.

***Federal Claims***

In the Second Amended Complaint Pittman is no longer asserting a claim pursuant to federal employment laws.  Indeed, he would be unable to assert such a claim against Carignan because Pittman was never employed by Carignan.  Instead, Pittman brings his action pursuant to

---

[2]      I have reviewed the three lawsuits referenced by Carignan.  They provide abundant evidence that Mr. Pittman has a penchant for filing lawsuits against his employers based on allegations of harassment arising from what Pittman views as sexually inappropriate behavior in the workplace by homosexual men.  However, Pittman's litigation history cannot be viewed as particularly vexatious or frivolous in the grand scheme of frivolous litigation.  None of the three cases was dismissed without the Court devoting considerable time and thought to the case.  The first case, Pittman v. Hunt Construction Group, 4:07-cv-1-D(2) (E.D. N.C.), was dismissed on June 26, 2008, on the employer's motion for summary judgment, following an earlier denial of a motion to dismiss brought by the employer.  The second case, Pittman v. Archer Western Contractors, 3:11-cv-556(W.D. N.C.) was dismissed sua sponte on November 28, 2011, because the plaintiff had failed to file his EEOC charges in a timely manner and affirmatively established in his own complaint that he had not done so.  The third case, currently on appeal, was ultimately dismissed by the District Court on the employer's second motion to dismiss.  The Court considered the matter extensively in a thoughtful sixteen page opinion.  Pittman v. Night Foreman Bob, James Austin Company, 2:11-cv-00842 (W.D. Pa.).  I do not view these other three lawsuits as having any bearing on this Court's determination regarding the allegations in this particular complaint.

4

42 U.S.C. § 1983, claiming that he has a federal right "to be free from outrageous comments in a public setting." (Response to Mot. to Dismiss at 2, ECF No. 40.) Based on the allegations in his Second Amended Complaint, Pittman claims that Carignan violated that right because of "his belonging to a certain class of individuals whose personal lifestyle was different from the norm," equating Carignan's alleged membership in that class as akin to being in the Ku Klux Klan. (Id.)

Section 1983 of the Civil Rights Act confers upon every United States citizen a right to redress against any person who, acting under color of state law, causes a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 provides a vehicle for a plaintiff to obtain federal court jurisdiction, but it does not provide any substantive rights independent of those otherwise granted under federal law or the United States Constitution. Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 47 (1st Cir. 2011). Pittman claims he has a federal right to be free from outrageous comments in a public setting. But in order to state a federal claim under Section 1983, Pittman would have to allege not only that Carignan violated a particular federal statute or constitutional provision that gives rise to the "right" that Pittman has articulated, but also that Carignan acted under color of state law. Mead v. Independence Ass'n, 684 F.3d 226, 231 (1st Cir. 2012).

Whether there is a federal right to be free from outrageous comments in a public setting under the United States Constitution or a federal statute is a novel question, but not one the Court needs to linger over. Pittman fails to allege facts supportive of his claim that Carignan acted under color of state color when he made these "outrageous" statements. Pittman essentially concedes that Carignan was not a state actor, but argues that Carignan's sexual preferences equate to membership in the Ku Klux Klan and that fact somehow makes Carignan a state actor. Pittman has failed to address the essential state action inquiry, which is whether the government

was sufficiently involved in the challenged actions that it could be deemed responsible for the plaintiff's claimed injury.  If there is no state action, then this Court cannot impose constitutional obligations on private actors, whether they belong to the Ku Klux Klan or not.  Yeo v. Town of Lexington, 131 F.3d 241, 248-49 (1st Cir. 1997).  Accordingly, the federal claim against Carignan should be dismissed.

**State Law Claims**

Pittman additionally brings claims under the Maine Protection from Harassment Act, as well as various common law claims.  If the Court dismisses Plaintiff's claims under 42 U.S.C. § 1983, which are the only claims over which it had original jurisdiction,[3] then the Court has discretion to determine how to proceed regarding the state law claims.  See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline the exercise of supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction");  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.");  Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir.1995);  Mead, 684 F.3d at 236 n.4 (1st Cir. 2012) (dismissal of supplemental state law claims well within the discretion of district court).

This court has broad discretion over the decision to exercise supplemental jurisdiction.  Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003).  "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any

---

[3]        Pittman has not invoked this Court's diversity jurisdiction, nor could he, given that the amount in controversy is $ 45,000.00.  See 28 U.S.C. § 1332.

supplemental state-law claims." <u>Rodriguez</u>, 57 F.3d at 1177.   I see no reason to deviate from that general principle in this case.

CONCLUSION

Based upon the foregoing, I recommend that the Court dismiss with prejudice all federal claims and I further recommend that the state law claims be dismissed without prejudice.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

October 15, 2012                               /s/ Margaret J. Kravchuk
                                               U.S. Magistrate Judge

7
